Danielle M. STEWART,[1] Respondent
Below, Appellant,

v.

Thomas D. STEWART, Petitioner
Below, Appellee.

No. 489, 2011.

Supreme Court of Delaware.

Submitted: March 14, 2012.
Decided: March 15, 2012.

**1.** The Court *sua sponte* assigned pseudonyms
to the parties by Order dated September 8,
2011. Supr. Ct. R. 7(d).

Bruce A. Rogers, Esquire, Law Offices of Bruce A. Rogers, Esquire, P.A., Georgetown, Delaware, for appellant.

William Chasanov, Esquire, Law Office of H. Clay Davis, III, P.A., Georgetown, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The respondent-appellant, Danielle M. Stewart (the "Wife"), appeals from a Family Court final judgment in favor of the petitioner-appellee, Thomas D. Stewart (the "Husband"), arising from the Husband's Petition to Modify Alimony and the Wife's Motion for Specific Performance and Rule to Show Cause. In this appeal, the Wife contends that the Family Court erred when it reformed the parties' Marital Property Settlement Agreement (the "Agreement") to provide that alimony payments would terminate upon the Wife's cohabitation. We have concluded that argument is not supported by the record.

### Facts [2]

The Husband and the Wife were married in February 1984, separated in April 2005, briefly reconciled in August/September 2005, and permanently separated in November 2005. They had one child, born in 1991. On September 28, 2005, the parties entered into the Agreement that is the subject of this dispute.

At the time the parties executed the Agreement, the Husband was not represented by counsel. The Husband had dismissed his prior counsel because he and the Wife intended to reconcile. The Family Court granted Husband's counsel's motion to withdraw on September 6, 2005. The Wife was represented by counsel at all times, and the parties signed the Agreement at the office of the Wife's counsel.

The Agreement provides for the payment of alimony from the Husband to the Wife "for the life of Wife," i.e., to terminate only upon the Wife's death. The Agreement states in relevant part:

2. Support. Should reconciliation fail, Husband agrees to pay permanent alimony to Wife in the amount of One

---

**2.** The facts and procedural history are taken primarily from the Family Court's order.

Thousand, Two Hundred Dollars and Zero Cents ($1,200.00) per month. This alimony shall commence upon separation of the parties and will continue in force and effect for the life of Wife.

In late 2005, the Husband learned that Delaware law provides that a judicial award of alimony will terminate upon remarriage or cohabitation of the recipient spouse, unless the parties expressly agree otherwise.[3] In June 2006, a Family Court Commissioner entered a divorce decree and the parties stipulated to the incorporation of the Agreement into that divorce decree.

On March 18, 2011, the Husband filed a Petition to Modify Alimony citing a real and substantial change in circumstances— the Wife's cohabitation with another male for two years. The Husband also argued that he did not understand the implications of the Agreement on alimony because he lacked legal counsel. The Family Court decided to construe the Husband's Petition as one to Reform or Rescind a Separation Agreement. On April 14, 2011, the Wife filed a Motion for Specific Performance and Rule to Show Cause on grounds that the Husband stopped paying alimony as required by the Agreement.

The Family Court consolidated the parties' petitions and held a hearing at which both parties testified. The Husband testified that he did not understand the alimony provision and thought "it was going to be until either she got remarried, passed away, moved in with somebody." The Family Court determined that the Agreement's alimony provision was unconscionable, explaining:

[T]he Court does not find that Husband had a meaningful choice when he entered into the Agreement. Although there was no evidence submitted as to Husband's state of mind when he signed the Agreement, it is reasonable to conclude that Husband believed he had to sign the Agreement in an attempt to save his marriage. Moreover, Husband testified that had he known that alimony generally terminates upon the death of either party, or remarriage or cohabitation of the receiving spouse, he would not have signed the Agreement. Furthermore, the Agreement was signed approximately three weeks following Husband's decision to dismiss his attorney, which was precipitated by the parties' decision to reconcile and withdraw their pending divorce action.

The Family Court reformed the Agreement to read as follows:

2. Support. Should reconciliation fail, Husband agrees to pay permanent alimony to Wife in the amount of One Thousand, Two Hundred Dollars and Zero Cents ($1,200.00) per month. This alimony shall commence upon separation of the parties and will continue in force and effect ~~for the life of Wife~~ *until the death of either party or the remarriage or cohabitation of the party receiving alimony.*

The Family Court also, *sua sponte*, considered and rejected the Wife's possible defense of laches. The Family Court held that the Husband was no longer required to pay alimony to the Wife and dismissed the Wife's petition.

### *Standard of Review*

 When reviewing a Family Court order, our standard and scope of review involves a review of the facts and law, as well as the inferences and deductions made by the trial judge.[4] To the extent that the issues on appeal implicate rulings of law,

---

3. *See* Del.Code Ann. tit. 13, § 1512(g) (2009).

4. *Brown v. Div. of Family Servs.*, 14 A.3d 507, 509 (Del.2011) (citing *Powell v. Dep't of Servs.*

we conduct a *de novo* review.[5] To the extent that the issues on appeal implicate rulings of fact, we conduct a limited review of the factual findings of the Family Court to assure that they are supported by the record and are not clearly erroneous.[6] We will not disturb inferences and deductions that are supported by the record and that are the product of an orderly and logical deductive process.[7] If the Family Court has correctly applied the law, our review is limited to determining if there was an abuse of discretion.[8]

■■ Where the Family Court is asked to terminate or modify a voluntary alimony agreement that is incorporated into a divorce decree, "the proper standards are the same that are generally applicable to the modification, reformation, or rescission of contracts."[9] For the Family Court to find a contract provision unconscionable, "its terms must be so one-sided as to be oppressive."[10] "[M]ere disparity between the bargaining power of parties to a contract will not support a finding of unconscionability. A court must find that the party with superior bargaining power used it to take unfair advantage of his weaker counterpart."[11]

■■ When contractual parties stand in a confidential relationship, however, equity subjects their contract to a higher degree scrutiny. In cases alleging undue influence, "[e]quity raises a presumption against the validity of a transaction by which the superior obtains a possible benefit at the expense of the inferior, and casts upon him the burden of showing affirmatively his compliance with all equitable requisites."[12] "This presumption is triggered by the marital relationship, which Delaware law views as being a confidential one involving trust concepts."[13]

### Alimony Statute

Title 13, section 1512(g) of the Delaware Code governs court orders for alimony

---

for *Children, Youth & their Families*, 963 A.2d 724, 730 (Del.2008)); *Tribbitt v. Tribbitt*, 963 A.2d 1128, 1130 (Del.2008) (citing *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del.1979)); *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983) (citation omitted).

5. *Brown v. Div. of Family Servs.*, 14 A.3d at 509 (citations omitted); *Tribbitt v. Tribbitt*, 963 A.2d at 1130 (citing *In re Heller*, 669 A.2d 25, 29 (Del.1995)).

6. *Brown v. Div. of Family Servs.*, 14 A.3d at 509 (citations omitted); *Solis v. Tea*, 468 A.2d at 1279 (citation omitted).

7. *Brown v. Div. of Family Servs.*, 14 A.3d at 509 (citations omitted); *Solis v. Tea*, 468 A.2d at 1279 (citation omitted).

8. *Stearns v. Div. of Family Servs.*, 23 A.3d 137, 141 (Del.2011) (citation omitted); *Brown v. Div. of Family Servs.*, 14 A.3d at 509 (citation omitted).

9. *Rockwell v. Rockwell*, 681 A.2d 1017, 1021 (Del.1996).

10. *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del.1989) (citation omitted) (internal quotation marks omitted).

11. *Id.* (internal citation omitted).

12. *Robert O. v. Ecmel A.*, 460 A.2d 1321, 1323 (Del.1983) (quoting *Peyton v. William C. Peyton Corp.*, 7 A.2d 737, 747 (Del.1939)), *overruled on other grounds by Sanders v. Sanders*, 570 A.2d 1189 (Del.1990). In *Sanders*, this Court held that "the Family Court lacks subject matter jurisdiction over an independent action for contractual rescission and ancillary relief pursuant to 13 *Del. C.* Ch. 15, when it is not part of divorce or annulment proceedings, and follows the parties' divorce." *Sanders v. Sanders*, 570 A.2d at 1190. In *Sanders* and *Ecmel A.*, the agreement at issue had not been merged into the divorce decree. *Id.; Robert O. v. Ecmel A.*, 460 A.2d at 1322–23. Here, by contrast, the Agreement was merged into the divorce decree and thus jurisdiction is not an issue.

13. *Robert O. v. Ecmel A.*, 460 A.2d at 1323 (citations omitted).

awards. While this provision does not apply to voluntary alimony agreements, here it informed the Family Court's conclusion that the contract was unconscionable. The provision provides a default rule that alimony will terminate when the recipient cohabitates, but expressly states that the parties may agree to other terms: "Unless the parties agree otherwise in writing, the obligation to pay future alimony is terminated upon ... cohabitation of the party receiving alimony."[14] Section 1519(b) similarly states: "[u]nless otherwise agreed by the parties in writing and expressly provided in the [divorce] decree, the obligation to pay future alimony is terminated upon the death of either party or the remarriage of the party receiving alimony."[15]

When faced with alimony agreement provisions similar to those at issue here, the Family Court has found the provisions to be unconscionable and subject to reformation. In *S.E.S. v. L.P.*, the Family Court found the parties agreement for Husband to pay alimony "for the rest of [Wife's] life" to be unconscionable and reformed the alimony provision accordingly.[16] In *S.E.S.*, both parties lacked counsel.[17] The Family Court explained that "[t]he parties' lack of knowledge about Delaware alimony law prevented them from making a well-informed, meaningful decision with the result being an unreasonably favorable provision to [Wife]. This is especially true in light of the later fact that

[Wife] cohabited with an unrelated male...."[18]

■ In *M.C.S. v. R.C.S., Jr.*, the Family Court also determined a lifetime alimony provision with no modification or termination clause to be unconscionable.[19] In *M.C.S.*, the Family Court reformed the alimony provision to include termination of alimony upon the remarriage or cohabitation of the Wife.[20] In reaching that conclusion, the *M.C.S.* Court noted that "[t]he failure of the [alimony] provision to include termination of alimony at Wife's cohabitation, remarriage, or even Husband's death illustrates the degree to which it unreasonably favors Wife."[21]

In support of its holding, the Family Court cited both *S.E.S. v. L.P.* and *M.C.S. v. R.C.S., Jr.* It also relied upon *Marseno v. Marseno.*[22] In *Marseno*, the Family Court declined to order specific enforcement of an unfair separation agreement against an unrepresented party where the record reflected that the overreaching opposing party had been represented by counsel at the time the unfair agreement was executed.[23] The following excerpt from the *Marseno* decision is equally applicable to the facts in this case:

> In good conscience a court should be repelled by the prospect of making its powers available for the enforcement of a contract that is patently unfair and the result of overreaching. It is, of course, no answer to the victim of an unfair contract to say "you made your contrac-

14. Del.Code Ann. title 13, § 1512(g) (2009).

15. *Id.* § 1519(b) (2004).

16. *S.E.S. v. L.P.*, 2004 WL 6042511, at *1 (Del.Fam.Ct. Oct. 5, 2004).

17. *Id.*

18. *Id.* at *3.

19. *M.C.S. v. R.C.S., Jr.*, 2006 WL 3197370, at *4 (Del.Fam.Ct. Aug. 3, 2006).

20. *Id.*

21. *Id.*

22. *Marseno v. Marseno*, 1980 WL 20453 (Del. Fam.Ct. Nov. 14, 1980).

23. *Id.* at *4–5.

tual bed now go lie in it." Such an approach would not only be terribly destructive of human spirit but would actually make the court an accessory to overreaching and unfairness. The problem is immeasurably compounded when the victimized spouse was unrepresented while the other spouse had counsel who prepared the contract and, perhaps, supervised its negotiation and/or execution.[24]

In this proceeding, the Husband entered the Agreement shortly after dismissing his counsel on belief that reconciliation was near. The goal of reconciliation was reflected in the Agreement itself, which states "**WHEREAS,** the parties hereto are attempting reconciliation at the time of the execution of this Agreement." The Agreement then provided that the Wife would be entitled to the alimony payments "[s]hould reconciliation fail." The Wife's counsel represented the Wife throughout the proceedings, drafted the Agreement, and hosted the meeting at which the Agreement was executed. The record supports the Family Court's factual findings of overreaching and unfairness. Accordingly, it properly held that the Agreement was unconscionable and subject to reformation.

### Conclusion

The judgment of the Family Court is affirmed.