# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HARRISON M. SANDERS, III,[1] | § | |
| | § | No. 338, 2023 |
| Appellee Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No.: CN21-03417 |
| TRINITY N. TURNER, | § | Petition Nos. 22-24780 and |
| | § | 22-24034 |
| Appellant Below, | § | |
| Appellee. | § | |

Submitted: May 22, 2024
Decided: July 22, 2024

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices; constituting the Court *en Banc*.

Upon appeal from the Family Court. **AFFIRMED**.

Patrick J. Boyer, Esquire, MACELREE HARVEY, LTD., Centreville, Delaware *for Appellee Below, Appellant*.

Lauren A. Nehra, Esquire, GAWTHROP GREENWOOD, PC, Wilmington, Delaware *for Appellant Below, Appellee*.

---

[1] The parties were assigned pseudonyms under Supreme Court Rule 7(d).

**SEITZ**, Chief Justice:

The question in this appeal is whether a contempt of court fine assessed by the Family Court to compel compliance with a court order should be paid to the party moving for contempt or to the court. In our view, the Family Court correctly ordered that the fine be paid to the court. We affirm the court's judgment.

I.

Harrison Sanders and Trinity Turner are the divorced parents of two children. On July 16, 2021, a Family Court Commissioner entered an Order of Protection From Abuse ("PFA Order") against Turner. The PFA Order required Turner to, among other conditions, be evaluated within two weeks by a domestic violence coordinating council certified treatment program and to obtain a psychological evaluation.[2]

In April 2022, the Family Court Commissioner found Turner in contempt of the PFA Order for failing to obtain the required evaluations ("First Contempt Order").[3] In the First Contempt Order, the court stated:

> [i]n order to compel the respondent's compliance with the above provisions, a penalty of $200 per day shall be assessed until she complies with the required evaluations and provides written copies to the petitioner's attorney. The penalty may be deducted from any payments owed to the respondent by the petitioner.[4]

---

[2] App. to Appellant's Opening Br. at A29–A30 [hereinafter "A__"].
[3] A410-A415.
[4] A415.

The court also extended the PFA Order and awarded Sanders attorneys' fees.[5]

Seven months later, Sanders filed a second motion for contempt. He alleged that Turner still had not completed the required evaluations and had violated other provisions of the PFA Order. The Family Court Commissioner found Turner in contempt for failing to comply with the court's PFA Order and the First Contempt Order ("Second Contempt Order").[6] The Commissioner imposed an $1,800 fine for nine days of noncompliance with the treatment provider requirement, and $49,400 for two hundred and forty-seven days for failure to obtain a psychological evaluation.[7] In a separate order titled "Order Granting Father Attorneys' Fees and Costs," the Commissioner awarded fees to Sanders and required that the contempt fine be paid to Sanders.[8]

Turner filed a Motion for Review by a Family Court Judge of Commissioner's Second Contempt Order.[9] The judge upheld the Commissioner's contempt finding and found that the Commissioner correctly calculated the fine amount.[10] With regard to the recipient of the contempt fine, the court stated:

> There appears to be a misapprehension, however, concerning the sanctions imposed against [Turner] to coerce compliance with the PFA Order, i.e., the $51,200.00 confirmed herein. The PFA Order was issued by the Family Court of the State of Delaware. The Court expects

---

[5] A416–A419.
[6] A655.
[7] *Id.*
[8] A744.
[9] A745.
[10] A807–10.

3

compliance with the Order. When the respondent under a PFA Order is found in contempt of the Order, the Court can impose sanctions to coerce compliance. Unlike reimbursement for attorney's fees as ordered in this case, the sanctions imposed to coerce compliance are payable to the Court, not to the petitioner.[11]

Sanders filed a motion for reargument contesting the court's ruling that the fine should be paid to the court.[12] The court denied the motion. It reasoned that the court "issued the order requiring the treatment and evaluation" and "it is the Court that is harmed by the non-compliance."[13] Thus, "other than compensation for losses sustained," the fine should be paid to the court.[14]

On appeal, Sanders argues that the Family Court erred when it (1) refused to apply *res judicata* and collateral estoppel to bar re-litigation of the fine recipient issue decided in the First Contempt Order; (2) modified the First Contempt Order without a motion or a statutory basis to do so; and (3) found the sanction was punitive, rather than coercive.[15] We review the Family Court's legal conclusions *de novo*.[16]

---

[11] A808–09.
[12] A925.
[13] A928.
[14] *Id.*
[15] Opening Br. at 6–8.
[16] *Stewart v. Stewart*, 41 A.3d 401, 403–04 (Del. 2012).

4

II.

A.

We start with the procedural issues.  Sanders argues that the First Contempt Order, which directed that the fine be paid to Sanders, was final.[17]  Neither party sought review of the First Contempt Order when it was entered.  Thus, according to Sanders, under principles of *res judicata* and collateral estoppel, the Family Court was not free to revisit through the Second Contempt Order the proper party to receive the payment.  Turner disagrees because the First Contempt Order did not settle the amount she owed if she failed to comply with the order and, according to Turner, "[n]o final judgment regarding the sanction was entered until the Second Contempt Order."[18]

As we have explained before, "*res judicata* bars a court or administrative agency from reconsidering conclusions of law previously adjudicated while collateral estoppel bars relitigation of issues of fact previously adjudicated."[19]  Both doctrines require a final determination.[20]  The First Contempt Order was not a final order because "[c]ontempt citations issued post judgment are subject to the test of finality and are not immediately appealable unless there is 'both a finding of

---

[17] In the contempt context, the economic component of a contempt order is referred to as a "fine" when money is assessed to coerce compel compliance with a court order. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994).

[18] Answering Br. at 14–15.

[19] *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000).

[20] *Id.* at 534–35.

contempt and a noncontingent order of sanction.'"[21]  In other words, "an order of contempt that imposes a fine or penalty that the party in contempt can avoid by complying with the earlier order is interlocutory."[22]  Here, the First Contempt Order with its coercive fine provisions was not final because it was conditioned on non-compliance.  It was only after Sanders brought the second contempt motion and the Commissioner issued the Second Contempt Order that the court assessed a fine and the First Contempt Order became final.  As Sanders recognized, "the monetary sanctions . . . were entirely avoidable by Mother and ended when compliance was secured."[23]

In any event, the First Contempt Order became part of the Second Contempt Order and was therefore reviewable with the Second Contempt Order.[24]  As part of the Second Contempt Order, the Commissioner sanctioned Turner under the First Contempt Order.[25]  It found Turner in contempt of the PFA Order, but also entered a total fine of $51,200 which included a fine for violating the First Contempt Order.[26]

---

[21] *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1249 (11th Cir. 2020) (citing *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 977 (11th Cir. 1986)); *Amara v. Cigna Corp.*, 53 F.4th 241, 251–52 (2d Cir. 2022).

[22] *S.E.C. v. Kirkland*, 533 F.3d 1323, 1325 (11th Cir. 2008); *S.E.C. v. Hickey*, 322 F.3d 1123 (9th Cir. 2003), *opinion amended on denial of reh'g sub nom. S.E.C. v. Hickey*, 335 F.3d 834 (9th Cir. 2003).

[23] Opening Br. at 35.

[24] *Escobio*, 946 F.3d at 1249 ("[T]he judgment and the order containing the finding of contempt merge and become subject to review on appeal.").

[25] A654–55.

[26] A654-A655; A744.

Through the Second Contempt Order, we review the First Contempt Order and its terms.[27]

Next, Sanders argues that the Family Court could not raise on its own the payment recipient issue. It is true that Turner did not raise the payment recipient issue in her request to review the Commissioner's Second Contempt Order. But under the review statute, a Family Court judge has broad discretion to review the Commissioner's order. The judge may "accept, reject or modify in whole or in part the Order of the Commissioner."[28] The judge can also "receive further evidence." Such broad review authority under the statute includes review of other errors that the judge identifies within the scope of the order.

Perhaps most importantly, Sanders suffered no prejudice from the Family Court's decision to consider an issue the parties had not raised. Sanders filed a motion for reargument where he was able to argue the merits of the payment recipient issue.[29] The court then ruled after hearing from Sanders.[30] Given these circumstances, the Family Court judge was free to consider the payment recipient issue on review of the Commissioner's orders.

---

[27] Other courts have reached the same conclusion. For instance, in *DeMasi v. DeMasi*, 597 A.2d 101, 103 (Pa. Super. Ct. 1991), the court considered two intertwined contempt orders. The court held that "[t]he issue presented by the first appeal as to contempt merges with and will be disposed of by the second contempt appeal."

[28] 10 *Del. C.* § 915(d)(1).

[29] A814.

[30] A925.

B.

Turning to the substance of the appeal, the Family Court ruled that coercive contempt sanctions not tied to compensatory losses should be paid to the court and not to a private litigant.[31] It reasoned that a purgeable daily fine to coerce a party to comply with a court order was civil, not criminal, contempt. And for civil contempt not related to a party's monetary losses caused by the contempt, "it is the Court that is harmed by the non-compliance" and "sanctions imposed to obtain compliance should be paid to the Court."[32]

The court can sanction parties through civil contempt to "'coerce[] the defendant into compliance with the court's order, [or] . . . compensate[] the complainant for losses sustained.'"[33] Sanders does not dispute that the Second Contempt Order was intended to coerce Turner to comply with the PFA Order and was therefore civil, not criminal contempt.[34] Although there does not appear to be a Delaware decision addressing the issue, the law in other jurisdictions supports the

---

[31] A928.

[32] *Id.*

[33] *DiSabatino v. Salicete*, 671 A.2d 1344, 1350 (Del. 1996) (quoting *Bagwell*, 512 U.S. at 829); *see also Wilmington v. Gen. Teamsters Local Union 326*, 321 A.2d 123, 125 n.5 (Del. 1974) ("[A] court may impose a fine payable to an aggrieved party as compensation for special damages sustained as a result of contumacious conduct by the contemnor.").

[34] Opening Br. at 32-33 (arguing extensively that the Family Court's Second Contempt Order was coercive and therefore civil contempt). Sanders appears to argue that the Family Court held that the Second Contempt Order was punitive and therefore criminal. *Id.* at 32. But the court held clearly that the Second Contempt Order was coercive and therefore civil. A927 ("The transcript of the hearing clearly indicates that the monetary sanction was imposed to coerce compliance with the Court's order. . . . [T]he Court finds that the sanction was civil in nature.").

8

view—well-reasoned in our opinion—that unless the civil contempt fine is compensatory in nature, the fine should be paid to the court.[35] As the Family Court held, it is primarily the court's authority that is being vindicated, not the rights of a private litigant.[36]

Sanders makes several confusing arguments on appeal. First, as best as we can surmise, he claims that the contempt citation was compensatory because he incurred $17,152 in expenses by "forgiving $14,000 in attorneys' fees" and paying "$2,500 towards Mother's psychological evaluation."[37] It is apparent, however, that for whatever reason he offered to forgive or contribute these amounts, the Commissioner's $200 per day contempt fine was unrelated to those amounts. Sanders also argues that paying contempt fines to the court would discourage a party

[35] *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1354 (2d Cir. 1989) (where plaintiff made no showing of compensable injury or actual loss, "the district court's order directing defendants jointly and severally to pay a $50,000 contempt sanction to [plaintiff] must be modified by directing that sanction to be payable into court"); *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 658 (2d Cir. 2004) ("To the extent that the sanction is compensatory, the fine should be correlated with the loss incurred . . . ."); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (vacating award of $400,000 to complainant because there was nothing in the record to support such loss and holding "[i]f the fine, or any portion of the fine, is coercive, it should be payable to the court"); *Winner Corp. v. H.A. Caesar & Co.*, 511 F.2d 1010, 1015 (6th Cir. 1975) ("It would make little sense to insist that fines for past contempt payable to the complainant be strictly based on evidence of actual damage, but to allow coercive fines, which are not calculated solely on the basis of the damage that violation of the [d]ecree would cause, to be paid to the private party.").
[36] "Courts independently must be vested with 'power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and . . . to preserve themselves and their [judicial] officers from . . . insults . . . .'" *DiSabatino*, 671 A.2d at 1348 (quoting *Bagwell*, 512 U.S. at 831). To the extent the fine lacks compensatory features, it is the court's authority that is vindicated because the fine "'coerce[s] the defendant into compliance with the court's order.'" *See Id.* at 1350 (quoting *Bagwell*, 512 U.S. at 821).
[37] Opening Br. at 37.

suffering harm from bringing a contempt motion.[38] But a party moving for contempt is motivated to obtain the benefits of an existing court order. And the expense of bringing the motion will in many cases be covered by the party held in contempt. As happened in this case, a request for attorneys' fees usually goes hand-in-hand with a contempt motion and stands a good chance of being granted if the court finds a party in contempt.[39] Here, the court compensated Sanders for the expense of bringing the motion.

### III.

The Family Court correctly held that the non-compensatory fine assessed as part of the Second Contempt Order was payable to the court, not Sanders. We affirm the judgment of the Family Court. Having failed to prevail on appeal, we also deny Sanders' request for attorneys' fees.

---

[38] *Id*. at 38.

[39] The Commissioner granted Sanders $12,143.83 in attorney's fees and costs related to the second motion for contempt. A797.

10