IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RALPH DORSEY,[1] | § | |
| | § | No. 128, 2025 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN22-02379 |
| DAPHNE MILNER, | § | Petition No. 22-11199 |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: October 24, 2025
Decided: January 20, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## **ORDER**

After consideration of the parties' briefs and the Family Court record, it appears to the Court that:

(1)     The appellant, Ralph Dorsey ("Ex-Husband"), filed this appeal from the Family Court's January 7, 2025 order resolving ancillary issues related to his divorce from the appellee, Daphne Milner ("Ex-Wife").  After careful review, we conclude that the Family Court erred when it granted Ex-Wife's motion to set aside a separation agreement purportedly agreed to by the parties without holding an

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

evidentiary hearing. We therefore remand this matter for further proceedings. Our reasoning follows.

(2)    The parties married in May 2012. In April 2022, Ex-Husband, with the assistance of counsel, petitioned for divorce. Ex-Husband did not ask the Family Court to retain jurisdiction over ancillary matters but did ask the Family Court to incorporate into the divorce decree a "reconciliation" agreement dated April 15, 2019, and February 2, 2020 (the "Separation Agreement"). Notice of the divorce petition was sent to Ex-Wife's last known address (Ex-Wife's mother's address in New Jersey) and posted on the Family Court's website. After Ex-Wife failed to answer the petition, Ex-Husband asked the court to grant the petition without a hearing. The Family Court obliged and entered a divorce decree on August 30, 2022, although the decree did not incorporate the Separation Agreement as Ex-Husband had requested.

(3)    In October 2022, Ex-Wife, proceeding *pro se*, filed a petition for alimony. The Family Court dismissed the petition on January 25, 2023, noting that "[a]limony cannot be obtained through a separate Petition for Alimony" and "[i]n [o]rder to request alimony, [Ex-Wife] would be required to file a Motion to Reopen [the divorce proceedings] and would have to satisfy one of the grounds set forth in

2

Family Court Civil Rule 60(b)" because neither party asked the court to retain jurisdiction over ancillary matters during the divorce proceedings.[2]

(4)     On March 23, 2023, Ex-Wife, now proceeding with the assistance of counsel, petitioned to reopen the divorce proceedings under Rule 60(b).  Following a September 20, 2023 evidentiary hearing and over Ex-Husband's objection, the Family Court granted Ex-Wife's petition "for the reasons stated on the record," and directed her to "file another request for reservation of jurisdiction over ancillary matters including name change along with the appropriate filing fee."[3]  During the September 20 hearing, the court overruled Ex-Husband's objection to Ex-Wife's testimony regarding the history of abuse between the parties for the limited purpose of determining whether there was reason to reopen the divorce proceedings, clarifying, "We are not litigating the history of abuse in this case."[4]  At the conclusion of the hearing, the court found that "[Ex-W]ife's mental state based on the volatile relationship that the parties have had as alleged by [Ex-W]ife… constitute[s] extraordinary grounds [under Rule 60(b)(6)] for reopening this matter."[5]

---

[2] App. to Opening Br. at A-138.
[3] *Id.* at A-217.
[4] Sept. 20, 2023 Hr'g Tr. at 23.
[5] *Id.* at 100.

(5) On September 28, 2023, Ex-Wife filed a request for the Family Court to retain jurisdiction over ancillary matters, including property division, alimony, and attorney fees and costs. Ex-Husband objected, arguing that jurisdiction for ancillary relief was restricted by the terms of the Separation Agreement, and asked the court to hold an evidentiary hearing.[6] On October 5, the Family Court ordered (i) the entry of an amended divorce decree retaining jurisdiction over property division, alimony, and attorney fees and costs; and (ii) the incorporation of the Separation Agreement into the amended divorce decree.[7] In its order, the court clarified that Ex-Wife retained the right to contest the enforceability of the Separation Agreement. Contemporaneously, the Family Court entered an amended final divorce decree dated October 5, 2023.[8]

(6) On October 18, 2023, Ex-Wife moved to set aside the Separation Agreement as unconscionable, claiming that Ex-Husband was the dominant party and citing her ongoing physical and mental abuse at Ex-Husband's hands as well as her inability to afford or obtain legal counsel when the Separation Agreement was purportedly reaffirmed in February 2020. In her motion, Ex-Wife claimed that Ex-

---

[6] Ex-Husband also filed a motion to reargue the court's decision to reopen the divorce proceedings, which was denied on January 25, 2024. *See infra* note 12.

[7] The Family Court also ordered that Ex-Wife's name be changed to her maiden name as she requested.

[8] At Ex-Husband's request, the Family Court later backdated the amended divorce decree to the original date of the parties' divorce—August 30, 2022.

4

Husband was the dominant party in their relationship because, among other things, Ex-Wife did not have access to any of the parties' bank accounts, Ex-Husband would "shut off" the parties' credit card if Ex-Wife made an unauthorized purchase, Ex-Wife was required to remit "every" receipt for purchases to Ex-Husband, Ex-Husband would "take [Ex-]Wife's car, hide it, and say it was stolen to 'punish' [Ex-]Wife if he was angry or dissatisfied with her," and "[Ex-]Husband monitored, controlled, [and] restricted [Ex-]Wife's daily activities…."[9] Ex-Husband responded to the motion to set aside the Separation Agreement and denied each of Ex-Wife's allegations of abuse or control. In support of her claim that the Separation Agreement was unconscionable, Ex-Wife claimed that Ex-Husband told her that if she did not sign the agreement, she would never see her children again and would be prosecuted for soliciting prostitution.[10] Ex-Husband specifically denied each of these allegations in his response and requested an evidentiary hearing.[11] Both Ex-Wife's allegations and Ex-Husband's denials were submitted to the Family Court under oath.

(7) Without holding an evidentiary hearing, the Family Court issued an order, emailed to counsel on January 25, 2024, granting Ex-Wife's motion to set

---

[9] App. to Opening Br. at A-272-275, ¶¶ 33-47.

[10] *Id*. at A-276-277, ¶¶ 57-68.

[11] *Id*. at A-343 ("Because respondent's motion to set aside the reconciliation agreement contains contested facts[,] petitioner respectfully requests an evidentiary hearing to the extent that [it] is required.").

aside the Separation Agreement as unconscionable.[12]  In support of its decision, the court found that Ex-Husband was the dominant party in the parties' relationship and cited "the ongoing physical and mental abuse in the marriage and the fact that [Ex-Wife] due to her unfavorable financial position … was unable to obtain counsel to review the agreement before signing [it] a second time."[13]

(8)    In May 2024, Ex-Husband moved to dismiss the ancillary proceedings, arguing that the Family Court lacked jurisdiction to reopen the divorce proceedings under Rule 60(b).  On May 30, the Family Court denied the motion to dismiss in a short order, citing the reasons stated in Ex-Wife's "thorough" opposition to the motion.  On June 3, 2024, the Family Court granted Ex-Wife's request for interim alimony and ordered Ex-Husband to pay her $1,096.00/month.  On June 4, 2024, the Family Court entered an amended order denying Ex-Husband's motion to dismiss and directing the dismissal of any of Ex-Husband's future filings that failed to include an affidavit of good cause.  Without attaching an affidavit of good cause, Ex-Husband separately moved for reargument of the court's May 30 and June 4 orders denying his motion to dismiss.  The Family Court denied the motions for reargument by order dated June 24, 2025, in which it observed that Ex-Husband had attempted to relitigate the Family Court's exercise of ancillary jurisdiction in seven

---

[12] By way of the same order, the Family Court also denied Ex-Husband's motion for reargument of the court's decision to reopen the divorce proceedings and Ex-Wife's motion for interim relief.
[13] App. to Opening Br. at A-352.

6

separate motions[14] and reiterated that Ex-Husband was required to include an affidavit of good cause with any future pleadings "in lieu of other sanctions as a reminder of the intent of [Family Court Rule of Civil Procedure] 11," which gives the court the discretion to impose sanctions on any attorney who, among other things, submits legal arguments that are frivolous or intended to harass or cause unnecessary delay in the resolution of the litigation. On June 27, 2024, the Family Court awarded attorney fees to Ex-Wife for the fees that she incurred defending Ex-Husband's motion to dismiss.

(9) The court held an evidentiary hearing on ancillary matters on November 15, 2024, and issued its decision on January 7, 2025. The Family Court ordered: (i) the proceeds from the sale of the marital home be divided 55%–45% in favor of Ex-Wife after Ex-Husband's mortgage credits were taken into account; (ii) the equitable division of the parties' rental properties to be split 40%–60% in favor of Ex-Husband; (iii) the equitable division of the taxable and tax deferred accounts to be split 50%–50% between the parties; and (iv) Ex-Husband to pay Ex-Wife alimony in the amount of $1776/month for 56 months. The parties filed respective motions for reargument and/or clarification, which the court resolved by way of

---

[14] In addition to filing multiple motions to reargue, Ex-Husband moved for the certification of an interlocutory appeal from the Family Court's decision to reopen the divorce proceedings and its decision to set aside the Separation Agreement. The requests were denied by the Family Court, and this Court refused to accept the appeals.

order dated February 26, 2025. The February 26 order reduced the amount of Ex-Husband's alimony obligation to $776/month. Finally, the court granted in part Ex-Wife's motion for attorney fees, including an award of $3,554 for the fees that she incurred opposing Ex-Husband's applications for the certification of an interlocutory appeal. This appeal followed.

(10) On appeal, Ex-Husband argues: (i) the Family Court lacked jurisdiction to reopen the divorce proceedings under Rule 60(b); (ii) if Rule 60(b) is, in fact, applicable, Ex-Wife failed to allege grounds for relief thereunder; (iii) the Family Court erred in the manner in which it set aside the Separation Agreement; (iv) the Family Court committed various errors when it divided the parties' assets and awarded Ex-Wife alimony; and (v) the Family Court improperly imposed sanctions on Ex-Husband by ordering him to reimburse Ex-Wife for a portion of her attorney fees. We find no merit to Ex-Husband's first and second arguments. And because we find Ex-Husband's third argument meritorious, we need not reach the merits of Ex-Husband's fourth and fifth arguments at this time.

(11) This Court's review of a Family Court decision includes a review of both the law and the facts.[15] Findings of fact will not be disturbed on appeal unless they are found to be clearly erroneous.[16] "The judgment of the Family Court must

---

[15] *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006).
[16] *Id*.

8

be affirmed when the inferences and deductions upon which it is based are supported by the record and are the product of an orderly and logical deductive process."[17] Conclusions of law are reviewed *de novo*, but if the Family Court correctly applied the law to the facts before it, we review its decision for an abuse of discretion.[18]

(12) A brief description of the Separation Agreement provides useful background for the issues on appeal. Before the parties moved to Delaware in 2021, they resided in New Jersey, where Ex-Husband had initiated a divorce action against Ex-Wife on four separate occasions. In 2019, while one of those actions was pending, the parties agreed to remain married to one another and to contract with each other concerning the disposition of their property in the event of their death or divorce, as set out in the Separation Agreement. The Separation Agreement addressed the parties' interests in two areas: the parties' interest in real property located at 200 Landing Road, Blackwood, New Jersey (property that has since been sold); and the parties' interest in Ex-Husband's retirement accounts. Specifically, the Separation Agreement provided that if the parties were to divorce in the future, Ex-Wife would "only be afforded the mortgage principal paydown [on 200 Landing Road] from the date of the execution of this agreement to the date of the filing of the divorce complaint;" and Ex-Wife waived any past, present, or future interest in Ex-

---

[17] *Id.* at 753.
[18] *Wright v. Wright*, 49 A.3d 1147, 1150 (Del. 2012).

Husband's annuity and pension in exchange for Ex-Husband's payment of Ex-Wife's tuition at a local technical trade school.[19]  The Separation Agreement was silent as to what interest the parties had in any proceeds from the sale of 200 Landing Road.  And the Separation Agreement specifically provided that the distribution of the parties' debts, any party's right to alimony, and issues related to child custody—which were not covered by the Separation Agreement—would be addressed at the time of any future divorce filing.  The Separation Agreement was purportedly reaffirmed on February 2, 2020, in exchange for Ex-Husband dismissing another divorce action against Ex-Wife.

(13)  Ex-Husband's first argument on appeal is that the Family Court lacked jurisdiction to reopen the divorce proceedings under Rule 60(b).  As Ex-Husband acknowledges, we squarely rejected this argument in *Wife B. v. Husband B.*[20]  We see no need to depart from this holding, especially where, as here, the Separation Agreement expressly provided that a number of matters—including, alimony, child support, and the division of marital debt—were not addressed therein and implicitly provided that those matters should be determined by a court of competent jurisdiction in the event of the parties' divorce.

---

[19] App. to Opening Br. at A-037.

[20] 393 A.2d 358, 361 (Del. 1978) ("We hold that failure to comply with the procedural norms of § 1518(b) (including, as here, a failure to timely file for the relief sought) does not deprive the [Family] Court of jurisdiction to consider an application for and to award relief as to the subjects stated therein, including alimony.").

(14) We consider next whether the Family Court exceeded its discretion when it granted Ex-Wife's motion to reopen the divorce proceedings under Rule 60(b).[21] "When determining whether there has been an abuse of such discretion, this Court considers two questions: (1) did the defaulting party make some showing that, if relief is granted, the outcome of the action may be different from what it will be if the default judgment is permitted to stand?; and (2) will substantial prejudice be caused [to] the non-defaulting party by granting the motion?"[22] Rule 60(b) is liberally construed in light of the underlying policy favoring a trial on the merits, but the movant bears the burden of establishing a basis for relief.[23] Relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances."[24]

(15) After careful review, we conclude that the Family Court did not exceed its discretion when it opted to reopen the divorce proceedings under Rule 60(b)(6). The testimony presented at the September 20 evidentiary hearing fairly established, among other things, that: (i) Ex-Wife left the marital home following a domestic incident that arguably hindered her ability to respond to Ex-Husband's petition for divorce; (ii) Ex-Wife had sought alimony relief within a reasonable period of time following the entry of the default divorce judgment; (iii) it was likely that Ex-Wife

---

[21] *See Ravine v. Ravine*, 2006 WL 453213, at *2 (Del. Feb. 22, 2006) ("A decision to reopen a default judgment under Rule 60(b) rests with the sound discretion of the trial court.").

[22] *Reynolds v. Reynolds*, 595 A.2d 385, 389 (Del. 1991) (citation modified).

[23] *Simpson v. Simpson*, 2019 WL 3763526, at *4 (Del. Aug. 8, 2019).

[24] *Jewell v. Div. of Soc. Servs.*, 401 A.2d 88, 90 (Del. 1979).

would prevail on her request for ancillary relief, given the income disparity between the parties; and (iv) Ex-Husband would not be prejudiced by the reopening of the divorce proceedings, which would allow the Family Court to incorporate the Separation Agreement into the amended divorce decree.

(16) Although we affirm the Family Court's reopening of the parties' divorce proceedings, we conclude that it set aside the Separation Agreement in error. "In Delaware, the enforcement of a marital separation agreement reached outside of court is governed by traditional contract principles."[25] For the Family Court to find a contract unconscionable, "its terms must be so one-side as to be oppressive."[26] When contracting parties stand in a confidential relationship, equity subjects their contract to a higher degree of scrutiny.[27] "[E]quity raises a presumption against the validity of a transaction by which the superior obtains a possible benefit at the expense of the inferior, and casts upon him the burden of showing affirmatively his compliance with all equitable requisites."[28] Under Delaware law, this presumption is triggered by the marital relationship.[29] Thus, Ex-Husband had the burden to prove that the Separation Agreement was fair and equitable.

---

[25] *Goode v. Goode*, 2025 WL 3204047, at *7 (Del. Nov. 17, 2025) (citation modified).

[26] *Stewart v. Stewart*, 41 A.3d 401, 404 (Del. 2012) (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989)).

[27] *Id.*

[28] *Robert O. v. Ecmel A.*, 460 A.2d 1321, 1323 (Del. 1983), *overruled on other grounds by Sanders v. Sanders*, 570 A.2d 1189 (Del. 1990).

[29] *Id.*

(17) As noted above, we will affirm the Family Court's findings if they are the product of an orderly and logical deductive process. We cannot so conclude here. Without the benefit of testimony or documentary evidence, the Family Court appears to have accepted Ex-Wife's claims that Ex-Husband was the dominant party and that the Separation Agreement was unconscionable.[30] Moreover, to the extent that the Family Court relied on evidence presented at the September 20, 2023 hearing to reopen the divorce proceedings, it expressly stated at the time: "Whether the waiver of property division in [the Separation Agreement] was fair or unfair cannot be determined at this time…. [And] the court need not make any such determination if that is something that can be determined at a later date."[31] Although we specifically refrain from deciding whether Ex-Husband was the dominant party or that the Separation Agreement was unconscionable, we conclude that on this record—where Ex-Husband categorically denied each of Ex-Wife's allegations

---

[30] For example, the court cites Ex-Wife's exhibit 3 to her motion to set aside the Separation Agreement in support of its finding that Ex-Husband "even used [Ex-Wife]'s son … as leverage [by] threatening to kick the child out of the home." App. to Opening Br. at A-350. Exhibit 3 is a screenshot of a text exchange between the parties where Ex-Husband tells Ex-Wife that she is "gonna raise" her son and advises her to "[t]ake the deal I offered." *Id*. at A-301-302. Ex-Wife cited this text exchange in support of her claim that Ex-Husband "told [Ex-]Wife that he would kick [her son] out of the home if [Ex-]Wife did not sign the [Separation] Agreement." *Id*. at A-276, ¶ 59. Ex-Husband categorically denied this characterization of the exchange in his response to the motion to set aside the Separation Agreement. *Id*. at A-342. The Family Court also accepted Ex-Wife's claim that she was not represented by counsel at the second signing of the Separation Agreement; Ex-Husband disputed this claim. *Id*. at A-276, ¶ 63; A-342.

[31] Sept. 20, 2023 Hr'g Tr. at 99.

upon which it appears that the Family Court relied—that Ex-Husband is entitled to a hearing on the enforceability of the Separation Agreement.[32]

(16) Because we conclude that further proceedings are necessary, we conclude that it is premature to address the merits of Ex-Husband's arguments concerning the disposition of ancillary matters because (i) the Separation Agreement addressed the division of the parties' real property (albeit, incompletely) and Ex-Husband's retirement benefits, and (ii) the Family Court's resolution of the parties' ancillary matters was premised on the unenforceability of the Separation Agreement.

(17) Similarly, although we affirm the Family Court's power under Rule 11 to impose sanctions on attorneys for the submission of legal arguments that are frivolous or intended to harass or cause unnecessary delay in the resolution of the litigation, we decline to review the Family Court's award of attorney fees at this time and instruct the Family Court to revisit on remand its finding that Ex-Husband engaged in vexatious litigation. Because the Family Court's decision awarding interim alimony to Ex-Wife did not implicate the enforceability of the Separation Agreement, that award should be reinstated pending further proceedings.

---

[32] *See Eberly v. Eberly*, 489 A.2d 433, 441 (Del. 1985) (reversing Family Court's decision granting the wife's petition for interim alimony for its failure to hold an evidentiary hearing despite the fact that the court had before it the husband's affidavit, which included several assertions challenging those made in the wife's affidavit; "[i]t is basic to our system of law that both [the Delaware and the United States Constitutions] establish as a fundamental requirement of due process that a party be afforded notice and an opportunity to be heard before judgment").

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this order.  Jurisdiction is not retained.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice