**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 26, 2025

Albert H. Manwaring, IV, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801

William M. Lafferty, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, Suite 1600
Wilmington, DE  19801

> RE: ***PXP Producing Co. LLC v. MitEnergy Upstream LLC,***
> Civil Action No. 2024-0668-MTZ

Dear Counsel:

I write to address petitioner PXP Producing Company LLC's ("Petitioner") motion for appointment of a receiver over cancelled respondent MitEnergy Upstream LLC (the "Company"),[1] and intervenor MEPUS Holdings LLC's ("Intervenor") motion to dismiss.[2] The Company was formed in 2006 to acquire from Pogo Producing Company ("Pogo") interests in certain oil, gas and mineral properties, and related assets and contracts.[3] Petitioner is Pogo's successor in interest.[4] Through a complex web of state and federal regulations, both the Company

---

[1] Docket Item ("D.I.") 24.

[2] D.I. 40.

[3] D.I. 29 [hereinafter "Am. Compl."] ¶ 8.

[4] *Id.* ¶ 2.

and Petitioner face exposure to the same oil well decommissioning costs.[5] If the Company pays some, Petitioner may owe less. Petitioner also claims a contractual right to indemnification to recover its decommissioning contributions from the Company.[6]

The Company was cancelled in 2019.[7] Petitioner now seeks to nullify that cancellation and to appoint a receiver.[8] Count I seeks nullification on the grounds that the Company violated 6 *Del. C.* § 18-804 by dissolving without making any provision for known decommissioning obligations. Petitioner contends that failure made the cancellation unlawful under 6 *Del. C.* § 18-203.[9] Count II seeks appointment of a receiver under 6 *Del. C.* § 18-805. Petitioner argues a receiver is needed to investigate the Company's cancellation and provision for decommissioning obligations.[10] Petitioner filed a motion to appoint a receiver, teeing up Count II for the Court's consideration.[11]

---

[5] *Id.* ¶ 18 (citing 30 C.F.R. §§ 250.1701, 250.1702, 250.146, and 250.105); *id.* ¶¶ 19, 21, 24.

[6] *Id.* ¶¶ 16–17.

[7] *Id.* ¶ 3.

[8] *Id.* ¶¶ 84, 88.

[9] *Id.* ¶¶ 79–83.

[10] *Id.* ¶¶ 86–88, 92.

[11] D.I. 24.

Intervenor is the successor by merger of one of Company's former members, and an owner of another former member.[12]  Intervenor opposes Petitioner's receiver motion,[13] and moved to dismiss the Amended Complaint.[14]  Intervenor argues both of Petitioner's claims are untimely, and contends the receiver claim is insufficiently pled.

I heard argument on the motions on February 25, 2025.[15]  The motions overlap on several issues, so I proceed by issue rather than by motion.  I deny Intervenor's motion to dismiss Counts I and II as untimely, then conclude Petitioner has neither pled nor shown a basis to appoint a receiver.  Petitioner's motion is thus denied.

## I.  Timeliness

Intervenor moved to dismiss both of Petitioner's claims as time-barred under the three-year statute of limitations set forth in 10 *Del. C.* § 8106.[16]  Petitioner opposes the motion on the ground that Intervenor lacks standing to assert a timeliness defense.  I agree.  The defense of untimeliness is personal to the party

---

[12] Am. Compl. ¶ 56.

[13] D.I. 31.

[14] D.I. 40.

[15] D.I. 57.

[16] D.I. 40 at 19–28; *see* 10 *Del. C.* § 8106 ("[N]o action based on a statute . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action.").

against whom the claim is asserted. Petitioner's claims are asserted against the cancelled Company; Intervenor is not the Company and has not shown itself to be in privity with it. Additionally, Count II seeks appointment of a receiver under 6 *Del. C.* § 18-805. That provision states a receiver may be appointed "at any time."[17] Intervenor's timeliness argument is inapplicable to Count II.

### A. Intervenor Lacks Standing To Seek Dismissal Of Counts Against The Company As Untimely.

Petitioner contends Intervenor lacks standing to assert a defense based on "laches or the analogous statute of limitations."[18] The defenses of laches and a statute of limitations are personal and may be asserted only by the party against whom the claim is brought or someone in privity with that party. Count I calls for the application of a statute of limitations by analogy. Delaware law has not squarely answered whether that timeliness defense is personal to the defendant. I conclude it is. It follows that Intervenor cannot assert it.

---

[17] 6 *Del. C.* § 18-805 ("[T]he Court of Chancery, on application of . . . any other person who shows good cause therefor, at any time, may . . . appoint 1 or more persons to be receivers.").

[18] D.I. 46 at 19–20.

### 1. Timeliness Defenses Are Personal To The Defendant.

Broadly speaking, this Court recognizes three timeliness defenses: laches in equity, statutes of limitations at law, and statutes of limitations applied by analogy in equity.[19] Laches is an equitable doctrine that "operates to prevent the enforcement of a claim in equity where a plaintiff has delayed unreasonably in bringing suit."[20] For legal claims seeking legal relief, "[s]tatutes of limitations exist at law and serve to bar claims brought after the limitations period."[21] When sitting in equity, and hearing an equitable claim seeking a legal remedy or a legal claim seeking equitable relief, this Court is not strictly bound by statutes of limitations, but may apply them by analogy.[22]

---

[19] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974–75 (Del. Ch. 2016). Strictly speaking, statutes of limitations by analogy are not an independent timeliness doctrine. Rather, they derive from courts of equity applying the analogous limitations period because "[s]tatutes of limitations traditionally do not apply directly to actions in equity." *Id.* at 975, 978. Our Supreme Court has observed a statute of limitations by analogy is a "[non-]traditional form" of laches. *See U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 502 (Del. 1996).

[20] Donald J. Wolfe, Jr. & Michael A. Pittenger, 2 *Corp. & Commercial Practice in Delaware Court of Chancery* § 15.07[a], at 15-80 (2024).

[21] *Kraft*, 145 A.3d at 974–75.

[22] *Id.* at 975, 983; Wolfe & Pittenger, *supra* note 20, at § 15.07[d], at 15-87 ("Strictly speaking, a statute of limitations at law does not bind a court of equity with respect to claims purely equitable in nature.").

Laches addresses the inequity arising from a defendant's prejudice or injury caused by the plaintiff's delay.[23]  Laches is a personal defense, available only to the defendant prejudiced by a plaintiff's delay.[24]  "[T]he defense of laches is one personal to defendant, and arises out of the personal relationship between defendant and plaintiff[.]"[25]  To establish laches, the asserting party must demonstrate three elements:  knowledge by the claimant, unreasonable delay in bringing the claim, and

---

[23] Wolfe & Pittenger¸ *supra* note 20, at § 15.07[c][4] at 15-85; *see Hudak v. Procek*, 806 A.2d 140, 155 (Del. 2002) (affirming trial court's decision that laches did not bar the plaintiff's claim, where the defendant "was not unfairly prejudiced," notwithstanding the passing of two witnesses); *Deputy v. Deputy*, 2020 WL 1018554, at *47–54 (Del. Ch. Mar. 2, 2020) (rejecting the laches defense where, despite the plaintiff's knowledge of the claim and unreasonable delay in bringing it, the defendant failed to demonstrate resulting prejudice); *Johnston v. Pedersen*, 28 A.3d 1079, 1092 (Del. Ch. 2011) (finding laches did not apply where the defendants "have not attempted to demonstrate any prejudice they suffered from the purported delay"); *Envo, Inc. v. Walters*, 2009 WL 5173807, at *11 (Del. Ch. Dec. 30, 2009) (holding laches did not apply where "Defendants have not shown that they suffered any prejudice from whatever delay fairly may be attributed to [the plaintiff]"), *aff'd*, 2013 WL 1283533 (Del. Mar. 28, 2013).

[24] *Two S. Corp. v. City of Wilm.*, 1989 WL 76291, at *1, *6, *7 (Del. Ch. July 11, 1989) (rejecting an intervenor's assertion of laches for lack of standing, as laches is "normally" asserted by the defendant); *In re AMC Ent.*, 2023 WL 2518479, at *5 (Del. Ch. Mar. 15, 2023) (finding the proposed intervenor lacked standing to assert laches, where the plaintiffs "have not asserted a claim or enforced a right against [him]" and the intervenor was "not an adverse party that can cry out from prejudicial delay" (citing *Two S. Corp.*, 1989 WL 76291, at *7)).

[25] James Buchwalter & John Kimpflen, *30A C.J.S. Equity* § 143 (May 2025 Update).

resulting prejudice to that party.[26]  The defendant's "[c]hange of position" is a "factor[] of supreme importance."[27]  "[I]mplicit in the concept of laches is the requirement that there be a causal relationship between the delay [by a plaintiffs] and the alleged prejudice [to a defendant]."[28]  Only the defendant, or one in privity with her, has standing to complain of her prejudice caused by the plaintiff's delay in suing her.[29]

Similarly, for a purely legal claim, only a defendant can wield a statute of limitations defense to preclude the plaintiff's claim.[30]  Statutes of limitations reflect

---

[26] *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009) (quoting *Fed. United Corp. v. Havender*, 11 A.2d 331, 343 (Del. 1940)).

[27] *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982) ("Knowledge and unreasonable delay are essential elements of the defense of laches. . . . Change of position on the part of those affected by non-action, and the intervention of rights are factors of supreme importance." (citing *Fed. United Corp. v. Havender*, 11 A.2d 331, 343 (Del. 1940))).

[28] *Robert O. v. Ecmel A.*, 460 A.2d 1321, 1326 (Del. 1983), *overruled on other grounds by Sanders v. Sanders*, 570 A.2d 1189 (Del. 1990).

[29] Buchwalter & Kimpflen, *supra* note 25, at § 143 ("A plaintiff is generally barred from relief by the laches of one with whom he or she stands in privity[.]"); *see also* Robert A. Matthews, Jr., *2 Annotated Patent Digest* § 11.91 ("As laches depends on the prejudice suffered by the defendant, the defense is 'personal to the particular party.'" (quoting *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992), *abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017))).

[30] *Leavy v. Saunders*, 319 A.2d 44, 47 (Del. Super. 1974) ("Stat[ute] of limitations is a defense which is personal to the defendant.").

a legislative determination that the claim must be timely pursued.[31] They exist to protect defendants from the burdens and prejudice arising from the passage of time, such as lost documents, faded memories, or missing witnesses—not to limit a court's authority to hear the claim.[32] The defense's availability is informed by the relationship between the parties.[33]

It follows that a statute of limitations is a defense "personal to the defendant."[34] According to *American Jurisprudence*, "[a] plea of the statute of

---

[31] *Kraft*, 145 A.3d at 974–75.

[32] *Leavy*, 319 A.2d at 47 ("Ordinarily statutes of limitations are concerned with causes of action or parties and they are applied without differentiating as to the court in which they are invoked. The real function of a statute of limitations is to protect prospective litigants against stale claims."); *Chaplake Hldgs., LTD. v. Chrysler Corp.*, 766 A.2d 1, 6 (Del. 2001) ("Statutes of limitation are designed to avoid the undue prejudice that could befall defendants, after the passage of an unreasonable amount of time, due to the loss of evidence, disappearance of witnesses, or fading memories."); *see also Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *21 (Del. Ch. Aug. 7, 2012) ("Statutes of limitations are enacted to require plaintiffs to use diligence in bringing suits so that defendants are not prejudiced by undue delay, in recognition of the fact that memories fade and information goes stale. Stale claims pose an obvious threat to doing real justice[.]") (internal citations and quotations omitted)); *Reid*, 970 A.2d at 182 ("Laches is an equitable defense born from the longstanding maxim equity aids the vigilant, not those who slumber on their rights." (internal quotation marks and citations omitted)).

[33] *Leavy*, 319 A.2d at 47 (observing "[v]arious matters growing out of the relationship of the parties (not involving courts) may determine the availability of the defense of statute of limitations").

[34] *Id.*; *Dep't of Lab. v. Red Rose Roofing, Inc.*, 2000 WL 970678, at *1 n.3 (Del. Super. Mar. 13, 2000) (citing *Leavy*, 319 A.2d at 47); *see also Allen v. Smith*, 129 U.S. 465, 470 (1889).

---

In the century following *Allen*, federal appellate courts have consistently recognized that a statute of limitations is a defense personal to the defendant and unavailable to a third party, absent privity. *See, e.g.*, *Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir. 1969) ("The raising of the defense of the statute of limitations, [] is a personal privilege of the defendant."); *Gibson v. Hudock*, 894 F.2d 407, 1990 WL 4410, at *1 (6th Cir. 1990) (TABLE) ("A statute of limitations defense is one of the personal defenses listed in Fed. R. Civ. P. 8(c)."); *United Fruit Co. v. J. A. Folger & Co.*, 270 F.2d 666, 669 n.1 (5th Cir. 1959) ("The view that the statute of limitations is a personal defense pervades much of the law[.]"); *Hodgson v. Lodge 851, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 454 F.2d 545, 553 (7th Cir. 1971) ("It has long been held that a statute of limitations is a personal defense." (first citing *Allen*, 129 U.S. at 470; and then citing *Finn v. United States*, 123 U.S. 227, 232–33 (1887))); *see also Boys Town, U.S.A., Inc. v. World Church*, 349 F.2d 576, 579 (9th Cir. 1965) (noting "the statute of limitations is a plea personal to the debtor" but can be asserted by a party in privity (internal quotation marks and citations omitted)); *Stokes v. Williams*, 249 F. 114, 115 (3d Cir. 1918) (recognizing "the general rule that the defen[s]e of the statute of limitations, though personal to a corporation, passes to its receivers"); *cf. United States v. Rodriguez*, 888 F.3d 26, 29 (2d Cir. 2018) (rejecting defendant's "adoption" of codefendant's statute-of-limitations defense because that defense "was personal to [the codefendant]").

Other states' courts of last resort have also described the defense as a personal privilege that may be raised or waived by the defendant, but not by others. *See, e.g.*, *Ajdler v. Province of Mendoza*, 123 N.E.3d 233, 239 n.6 (N.Y. 2019) ("[T]he Statute of Limitations is generally viewed as a personal defense to afford protection to defendants against defending stale claims, [and] also expresses a societal interest or public policy of giving repose to human affairs" (alteration in original) (internal quotation marks and citation omitted)); *Graham v. Foster*, 893 N.W.2d 319, 321–22 (Mich. 2017) ("[A] statute of limitations defense is personal to the party raising it."); *Kobbeman v. Oleson*, 574 N.W.2d 633, 640 (S.D. 1998) ("[T]he statute of limitations defense is personal and cannot be asserted for someone else[.]"); *Shilts v. Young*, 643 P.2d 686, 689 n.3 (Alaska 1981) ("[A] plea of the statute of limitations is a personal defense."); *City Collectors, Ltd. v. Moku*, 439 P.2d 217, 218 (Haw. 1968) ("The defense of the statute of limitations is a personal defense and the defendant alone may exercise or waive the same."); *Davis v. Barr*, 157 So. 2d 505, 510 (Miss. 1963) (recognizing "the universal rule that a statute of limitation—or a defense by a plea setting up the limitations of action—defense is personal"), *order clarified*, 163 So. 2d 745 (Miss. 1964); *Akin v. City of Miami*, 65 So. 2d 54, 56 (Fla. 1953) ("[T]he defense of the statute of limitations is a personal defense."); *Union Sugar Co. v. Hollister Est. Co.*, 47 P.2d 273, 275 (Cal. 1935) ("[T]he statute of limitations is a special defense, personal in its nature, which may be waived or asserted.");

limitations is a personal defense.  Thus, it generally cannot be asserted for someone else, unless that other person is in privity with or standing in the place of the person who could assert the statute."[35]  A seminal law review article echoes that conclusion, reasoning from the broader "corollary rule that in general a third person may not plead the statute."[36]  Under that corollary rule:

---

*Ray v. Okla. Furniture Mfg. Co.*, 40 P.2d 663, 664 (Okla. 1934) ("The defense of the statute of limitations is a personal affirmative defense to the defendant."); *Bates' Adm'r v. Lockery*, 44 S.W.2d 589, 590 (Ky. 1931) ("The defense of limitations is a personal one, and it may be waived.  It may be waived only by the person entitled to rely upon it."); *Dolan v. Tate*, 137 So. 515, 516 (Miss. 1931) ("The defense of the statute of limitations is a personal privilege that a defendant may waive."); *Gentry v. Field*, 45 S.W. 286, 287 (Mo. 1898) ("The defense of the statute of limitations is a personal privilege[.]"); *Nugent & Pullen v. Robertson*, 88 So. 895, 898 (Miss. 1921) ("[T]he statute of limitations is a personal defense, and cannot be pleaded for one defendant by another."); *Guar. Sec. Co. v. Coad*, 195 P. 22, 23 (Wash. 1921) (holding "the statute of limitations can only be invoked by the debtor himself"); *Mountain Waterworks Const. Co. v. Holme*, 113 P. 501, 509 (Colo. 1911) ("The defense of the statute of limitations is a personal privilege of a defendant."); *Pendley v. Powers*, 58 S.E. 653, 653 (Ga. 1907) ("[T]he right to plead the statute of limitations to a suit is a personal privilege."); *Funk v. Kempton*, 77 N.E. 683, 685 (Ill. 1906) ("The defense of the statute of limitations, being a personal defense, can only be made available by the person for whose use the statute inures, or of some[o]ne standing in his stead."); *Wilmer v. Gaither*, 12 A. 253, 254 (Md. 1888) ("[T]he statute of limitations [] is purely a personal defense."); *Sawyer v. Sawyer*, 1883 WL 3394, at *1 (Me. Mar. 24, 1883) ("[T]he right to set up the statute of limitations as a ground of defense is the personal privilege.").

[35] 51 Am. Jur. 2d Limitations of Actions § 55 (internal citations omitted).

[36] *Developments in the Law Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1250 (1950) [hereinafter "*Developments*"]; *see Lebanon Cty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1197 (Del. Ch. 2022) (referring to *Developments* as "[a] seminal law review article").

> Even though the third person would be adversely affected by a judgment and execution against the obligor, he is precluded from interposing the [statute of limitation] bar, on the ground that the claimant should be assured whatever benefits he may receive from the obligor's voluntary "waiver" of the statute.[37]

The same principle bars courts from raising the defense sua sponte.[38] Limited exceptions may exist for (i) "transferees" of interests in a property, (ii) "personal representative[s] or trustee[s]," or (iii) "distributees or beneficiaries."[39]

When this Court applies a statute of limitations by analogy, those same principles govern. Where legal claims "find their way into Chancery in search of an equitable remedy,"[40] this Court applies the applicable statute of limitations by analogy.[41] This concept arose to ensure a plaintiff cannot evade a legal claim's statutory time bar by requesting equitable relief.[42] It expanded to "include the

---

[37] *Developments*, *supra* note 36, at 1250.

[38] *Id.* (explaining the restriction on who may assert a time bar defense is "an example of the broader but analogous proposition that a court will not act *sua sponte* or on request of a person without interest in the subject matter of a litigation" (internal citations omitted)).

[39] *Id.*

[40] *Kahn v. Seaboard Corp.*, 625 A.2d 269, 272 (Del. Ch. 1993).

[41] *Id.* at 271.

[42] *Kraft*, 145 A.3d at 979–80 (explaining the rationale behind applying analogous limitations period is to "prevent[] plaintiffs from circumventing a statute of limitations that would bar their legal claim by requesting equitable relief instead"); *see also id.* at 979 n.39

opposite circumstance—an equitable claim requesting a legal remedy, such as damages for a breach of fiduciary duty."[43] The point is to align with the timing expectations that would govern if the claim were heard at law. To implement this parity, and because of "its quasi-legal status"[44] rooted in a statute meant to protect the defendant, a statute of limitations applied by analogy must also be personal to the defendant. Merely drifting from law to equity offers no basis to expand the universe of persons with standing to complain a suit was brought too late. As at law, only the defendant (or persons in privity with her) may wield a statute of limitations by analogy. It may not be asserted by a stranger.

Thus, each form of a timeliness defense—whether laches, a strict statute of limitations, or a statute of limitations by analogy—is a personal defense. It may be asserted only by a party against whom the claim is brought, or by persons standing in that party's shoes or acting on its behalf.

---

(collecting cases and discussing the rationale "was particularly apt when" the plaintiff sought "equitable remedies that were the *functional equivalent* of legal ones").

[43] *Id.* at 980 (observing over time, the Court's "use of limitations periods widened").

[44] *Id.* at 983 (noting the Court should give strong deference to an analogous limitations period when a statute of limitation applies by analogy because of "its quasi-legal status").

### 2. Intervenor Lacks Standing To Assert A Timeliness Defense To Count I.

Count I seeks to nullify the Company's certificate of cancellation. Intervenor asserts that claim is untimely under 10 *Del. C.* § 8106, as it was brought more than three years after the Company was cancelled.[45] Whether Section 8106 applies strictly or by analogy, an untimeliness defense may be wielded only by the respondent. In a claim to nullify a company's certificate of cancellation, the cancelled company is the proper respondent.[46] Indeed, Count I is asserted against the Company. Only the Company through a receiver,[47] or one in privity with the Company, may assert Count I is untimely.[48]

---

[45] While the parties agree Count I must be brought within three years of the Company's cancellation under 10 *Del. C.* § 8106, they are imprecise as to whether that period is imposed strictly or by analogy. D.I. 40 at 19–20; D.I. 46 at 21 (first citing *Metro Commc'ns Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 165 (Del. Ch. 2004) ("[A] three-year statute of limitations applies to actions under § 18-804."); and then citing *Thor Merritt Square, LLC v. Bayview Malls LLC*, 2010 WL 972776, at *3 n.6, *6 (Del. Ch. Mar. 5, 2010) (providing the analogous statute of limitations for a nullification claim is three years under 10 *Del. C.* § 8106(a))); D.I. 50 at 21–22. Because the foregoing discussion establishes every flavor of timeliness defense is personal to the defendant, I need not categorize it here.

[46] *In re Reinz Wis. Gasket, LLC* (*Reinz II*), 2023 WL 3300042, at *2 (Del. Ch. May 8, 2023), *appeal refused*, 300 A.3d 1270 (Del. 2023) (TABLE).

[47] 6 *Del. C.* § 18-805 (granting a receiver of a cancelled company the "power to . . . defend, in the name of the limited liability company, . . . all such suits as may be necessary or proper" for the receiver's purpose).

[48] I recognize that if only a cancelled company can assert a timeliness defense to a claim seeking to nullify its certificate of cancellation, and if that cancelled company can act only

Intervenor is not the Company. Intervenor is the successor in interest to one former member of the Company, and an owner of another.[49] Absent a showing of privity with the Company, Intervenor lacks standing to assert the Company's timeliness defense. Intervenor has not argued or briefed that it stands in privity with the Company. I consider that argument waived.[50]

Intervenor argues it has standing to assert a timeliness defense as "an adverse party" to Petitioner.[51] They may indeed be adverse: Petitioner's nullification claim is presented alongside a veil-piercing theory, indicating Petitioner intends to seek indemnification or contribution from Intervenor once the Company is revived. But the possibility of adverse consequences does not permit Intervenor to assert a

---

through a receiver, then only a party in privity with the Company or a receiver appointed for the Company may raise the timeliness defense. *See Reinz II*, 2023 WL 3300042, at *2; *see also In re Reinz Wis. Gasket, LLC*, 2023 WL 9016148, at *3–4, *4 n.27 (Del. Ch. Dec. 29, 2023) (collecting authorities and discussing the "[h]ornbook law" that a "receiver stands in the shoes of the entity in receivership"). That is a strange result. But it follows from the fundamental nature of the defense: a timeliness defense is personal to the defendant. *See supra* Section I.(A)(1). A defense that a claim to nullify a certificate of cancellation is untimely must be left to a receiver or a party in privity with the cancelled entity.

[49] Am. Compl. ¶ 56.

[50] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[51] D.I. 50 at 21.

defense that belongs to the Company.[52]  Similarly, Intervenor points to grounds supporting its intervention as justification for "assert[ing] all [timeliness] defenses."[53]  That argument conflates standards allowing a stranger to participate in a litigation with standards permitting that stranger to assert a defense personal to the defendant.[54]  The fact that a third party may "be adversely affected by a judgment and execution against the obligor" does not entitle that third party to "interpose the statute's bar."[55]

Intervenor may not assert the Company's timeliness defense to Count I.  Its motion to dismiss on that basis is denied.

---

[52] *Developments*, *supra* note 36, at 1250.

[53] D.I. 50 at 21 (contending "[s]hould the Court grant [its] Motion to Intervene, then [it] may appropriately assert all such defenses" (citing Charles A. Wright & Arthur R. Miller, *7C Fed. Prac. & Proc. Civ.* § 1920 (3d ed.) (noting "the intervenor is entitled to litigate fully on the merits once intervention has been granted"))).

[54] *Compare United Rentals, Inc. v. RAM Hldgs., Inc.*, 2007 WL 4327770, at *1 (Del. Ch. Nov. 29, 2007) (discussing standards for intervention as a matter of right or permissive intervention), with *supra* nn. 29, 34–45 and surrounding text (discussing only persons in privity with a defendant may assert defenses personal to the defendant).

[55] *Developments*, *supra* note 36, at 1250.

B.     **Count II Is Not Subject To A Limitations Period.**

Intervenor's lack of standing to assert the Company's timeliness defense may very well extend to Count II, for appointment of a receiver. But even the Company lacks such a defense: Count II is not subject to any limitations period.

Section 18-805 expressly permits the appointment of a receiver "at any time."[56] Despite acknowledging that, Intervenor still seeks dismissal on the basis that it is too late to claw back distributions.[57] But Section 18-805's "'[a]ny time' means just that; the application may be filed at any time."[58] At best, Intervenor's

---

[56] 6 *Del. C.* § 18-805 ("[T]he Court of Chancery . . . at any time, may . . . appoint 1 or more persons to be receivers.").

[57] D.I. 40 at 22–23. Delaware law imposes a three-year limitations period on actions to recover improper distributions, regardless of whether the distribution occurs during or outside of winding up. *See* 6 *Del. C.* § 18-804(d) (requiring that "an action to recover the distribution from [a] member" after the commencement of winding up be brought within three years of the distribution date); 6 *Del. C.* § 18-607(c) (imposing the same three-year limitations period for distributions made outside of winding up).

[58] *Tratado de Libre Commercio, LLC v. Splitcast Tech., LLC*, 2019 WL 1057976, at *2 (Del. Ch. Mar. 6, 2019) (finding a petition to appoint a trustee for a limited liability company "dissolved for more than three years" was not time-barred). Section 18-805's counterpart governing the appointment of receivers for Delaware corporations, 8 *Del. C.* § 279, further supports that Section 18-805 is not subject to any limitations period. Like Section 18-805, Section 279 permits this Court to appoint a receiver "at any time," and Delaware courts have construed that language as signaling no legislative intent to impose a statute of limitations. *In re Krafft-Murphy Co., Inc.*, 2011 WL 5420808, at *12 (Del. Ch. Nov. 9, 2011) (explaining Section 279's "at any time" language implied no "legislat[ive] inten[t] to create what would amount to a de facto statute of limitations"). Because Section 18-805 is "almost identical" to Section 279, "authorities interpreting § 279 are persuasive

argument goes to whether there is good cause to appoint a receiver, not the timeliness of Petitioner's claim.

Intervenor's motion to dismiss the Amended Complaint as untimely is DENIED.

## II. Petitioner Failed To Show Good Cause For Appointing A Receiver.

Count II and Petitioner's motion seek to appoint a receiver under Section 18-805. That statute authorizes this Court to appoint a receiver to settle "unfinished business of the limited liability company."[59] Section 18-805 grants a receiver authority "to safeguard the collection and administration of still existing property interests of a dissolved LLC."[60] The receiver's charge is to take custody "of the limited liability company's property, and to collect the debts and property

---

when interpreting § 18-805." *Matthew v. Laudamiel*, 2012 WL 605589, at *21 (Del. Ch. Feb. 21, 2012).

[59] *In re VBR Agency, LLC*, 274 A.3d 1068, 1073 (Del. Ch. 2022) (quoting 6 *Del. C.* § 18-805).

[60] *Coyne v. Fusion Healthworks, LLC*, 2019 WL 1952990, at *9 (Del. Ch. Apr. 30, 2019) ("The purpose of Section 18-805 is to benefit [equity] holders and creditors where there are undisposed of assets remaining after dissolution by allowing appointment of a receiver to safeguard the collection and administration of still existing property interests of a dissolved LLC." (internal quotation marks and citations omitted)); *see also Jones v. Maxwell Motor Co.*, 115 A. 312, 315 (Del. Ch. 1921) ("When a corporation has no assets, no useful purpose can be subserved by naming a receiver—an officer of the court whose function under the statute is to take, hold, manage and administer assets; and in such case, the receiver ought not to be appointed.").

due and belonging to the limited liability company, with the power to prosecute and defend, in the name of the limited liability company, . . . all such suits as may be necessary or proper for the purposes aforesaid," with the goal of settling "the unfinished business of the limited liability company."[61]  On a motion to dismiss, that means a petition "must plead facts that, if true, make it reasonably conceivable that the [Company] is reasonably likely to have undistributed property."[62]

To warrant the appointment of a receiver under Section 18-805, Petitioner must "show good cause therefor."[63]  Petitioner seeks to do so by alleging a Section 18-804(b) violation in connection with the Company's cancellation.  To state a viable claim, Petitioner must allege "sufficient grounds for the Court to conclude that it is reasonably likely" the Company held assets at the time of dissolution but failed to reserve for claims as Section 18-804(b) requires.[64]  If the

---

[61] 6 *Del. C.* § 18-805.

[62] *In re ADM Trade Res., Inc.*, 2023 WL 6854462, at *5 (Del. Ch. Oct. 18, 2023).

[63] 6 *Del. C.* § 18-805; *In re Reinz Wis. Gasket, LLC* (*Reinz I*), 2023 WL 2568326, at *3 (Del. Ch. Mar. 20, 2023) ("Petitioner bears the burden of demonstrating good cause for the appointment of a receiver.").  Petitioner embraced this burden.  D.I. 24 ¶ 20; D.I. 39 ¶ 7 n.3. I therefore do not reach the parties' dispute over whether Petitioner is a creditor under Section 18-805.

[64] *Reinz I*, 2023 WL 2568326, at *4 (quoting *In re Tex. E. Overseas, Inc.*, 2009 WL 4270799, at *4 (Del. Ch. Nov. 30, 2009), *aff'd*, 998 A.2d 852 (Del. 2010)).

alleged asset is a claim to be satisfied through the receiver's efforts, that claim "must be facially plausible."[65] Mere "speculat[ion] that the dissolved [entity] may still have undistributed assets" is not enough.[66]

Intervenor opposes the appointment of a receiver on the grounds that Petitioner's motion fails to establish good cause, *i.e.*, a reasonably likely violation of Section 18-804.[67] Intervenor also seeks dismissal of Count II on the grounds that the Amended Complaint fails to plead good cause.[68]

The pleading standards under Delaware law are minimal.[69] On a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must accept all well-pleaded factual allegations in the complaint as true, accept even vague allegations in the complaint as well-pleaded if they provide the defendant notice of the claim, and draw all reasonable inferences in favor of the plaintiff.[70] The Court will grant a Rule 12(b)(6) motion if the "plaintiff could not recover under any

---

[65] *Tex. E. Overseas*, 2009 WL 4270799, at *5 n.39; *see ADM Trade Res.*, 2023 WL 6854462, at *6 n.10.

[66] *Tex. E. Overseas*, 2009 WL 4270799, at *4.

[67] D.I. 31 ¶¶ 2–3; *id.* ¶¶ 8–14.

[68] D.I. 40 at 28–35; D.I. 50 at 3–14.

[69] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[70] *Id.*

reasonably conceivable set of circumstances susceptible of proof."[71]  The Court will accept only those reasonable inferences "logically flow from particularized facts alleged by the plaintiff."[72]  The Court need not "accept as true conclusory allegations without specific supporting factual allegations."[73]  On a motion to dismiss, that means Petition "must plead facts that, if true, make it reasonably conceivable that the [Company] is reasonably likely to have undistributed property."[74]

At bottom, Petitioner seeks a receiver to investigate whether the Company or its members should contribute to decommissioning costs or indemnify Petitioner. Between its Amended Complaint and its motion, Petitioner makes three attempts at this relief.[75]  I address each in turn, measuring each against the reasonable likelihood standard for relief and the reasonable conceivability standard for dismissal.  Each falls short of both standards.

---

[71] *Id.*

[72] *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008).

[73] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (internal quotation marks and citations omitted).

[74] *ADM Trade Res.*, 2023 WL 6854462, at *5.

[75] I say the relief "may" be granted because the parties dispute whether the good cause standard can ever be satisfied at the pleading stage.  I conclude it was not here, without commentary on whether it could be.

A. **2009 Asset Sale Distributions**

Petitioner alleges that after the Company sold its assets for $238 million in 2009, it distributed those proceeds to its members over the next ten years without reserving for decommissioning costs.[76]  Petitioner suggests a receiver should investigate whether any of that cash remains "available" for decommissioning.[77]

But Petitioner does not assert those distributions occurred after the Company's dissolution or during its winding up—timing that is critical to allege a Section 18-804(b) violation.[78]  In the ordinary course outside of dissolution, an LLC may freely distribute or dispose of assets without reserving for contingent

---

[76] *See, e.g.*, D.I. 24 ¶¶ 6, 17, 22; D.I. 39 ¶ 9 (citing D.I. 31 Ex. 1).

[77] Am Compl. ¶¶ 88–89; *see also* D.I. 24 ¶ 22.

     Intervenor fairly interpreted this theory as suggesting the distributions might be "available" through a clawback by a receiver.  Am. Compl. ¶¶ 88–89.  In response, Intervenor argued that any such theory would be time-barred, as the statutory three-year period to seek liability for distributions has passed, regardless of whether those distributions were made during the Company's winding-up period.  6 *Del. C.* § 18-804(d) (addressing recovery of distributions within a winding-up period); 6 *Del. C.* § 18-607(d) (addressing recovery of distributions outside of winding up).  Petitioner maintains it is not seeking to claw back the distributions.  D.I. 39 ¶ 11; D.I. 58 at 38, 65.  I take Petitioner at its word, and do not consider a clawback theory as a basis for appointing a receiver or stating a claim.

[78] *Techmer Accel Hldgs., LLC v. Amer*, 2010 WL 5564043, at *7 (Del. Ch. Dec. 29, 2010) ("[O]nly upon dissolution must a limited partnership 'pay or make reasonable provision to pay all claims and obligations' of the partnership before making distributions to its partners." (quoting 6 *Del. C.* § 17–804(b))).  6 *Del. C.* § 17–804(b) governs a limited partnership's dissolution; it is identical to Section 18-804.

liabilities.[79] Section 18-804 applies only "after" the dissolution of an LLC, and the LLC Act triggers dissolution upon the occurrence of specified statutory events—none is alleged here.[80]

Petitioner speculates that the Company may have dissolved before filing its certificate of cancellation; Petitioner also generally asserts the Company failed to make reasonable provision for claims at some undefined point.[81] But Petitioner does not allege when dissolution occurred, nor that any distributions took place after that date. Petitioner can only guess the Company may have been winding up when

---

[79] *See, e.g.*, 6 *Del. C.* § 18-601 (providing "a member is entitled to receive [interim distributions] before the [company's] dissolution and winding up thereof"); 6 *Del. C.* § 18-607 (setting forth limitations on distribution outside of the winding up process); 6 *Del. C.* § 18-210 (suggesting a limited liability company may consummate "sale of all or substantially all of [its] assets").

[80] 6 *Del. C.* § 18-801. The parties may contractually stipulate to events that trigger dissolution. *Id.* The parties do not contend that the Company's LLC agreement contains any such provision, nor do I discern any. *See* D.I. 1 Ex. B. Absent a contrary agreement, other significant corporate events do not cause dissolution. *See* 6 *Del. C.* § 18-801(b) ("Unless otherwise provided in a limited liability company agreement, the death, retirement, resignation, expulsion, bankruptcy or dissolution of any member or the occurrence of an event . . . shall not cause the limited liability company to be dissolved[.]"); Robert L. Symonds, Jr. & Matthew J. O'Toole, *Symonds & O'Toole on Delaware Limited Liability Companies* § 16.03 [C], at 16-31 ("[A] Delaware limited liability company's merger or consolidation, transfer, domestication, or continuance out of Delaware, conversation to another business form, and division . . . unless otherwise agreed, do not require the company to wind up its affairs."); *see also* 6 *Del. C.* §§ 18-209(g), 18-213(d), 18-216(c), and 18-217(d).

[81] Am. Compl. ¶ 55.

distributions were made, offering no facts to inform that guess or support an inference it is correct.[82]

Speculation cannot support a reasonable inference of a Section 18-804 violation. The Company had no duty to reserve for decommissioning costs outside dissolution and wind-up. Petitioner has not pled or shown a reasonable likelihood that the Company had dissolved—or was winding up—when it made the distributions. Without that foundational allegation, it is not reasonably conceivable the distributions violated Section 18-804, so Petitioner has not pled or shown good cause to appoint a receiver.

## B. Veil-Piercing

Petitioner also argues that a receiver should be appointed to investigate potential veil-piercing claims against the Company's members or affiliates in pursuit

---

[82] *Id.* ¶ 15 (alleging the Company "upon information and belief, failed to pay or make reasonable provision to pay for its known contractual and known federal and state decommissioning obligations during its dissolution and wind up before filing its Certificate of Cancellation"); *id.* ¶ 51 (alleging "years before [the Company] cancelled its Certificate in 2019, it had full knowledge that it owed continuing decommissioning obligations" and the Company "during its wind up and dissolution, was bound to pay or make reasonable provision to pay for its decommissioning obligation"). Intervenor asserted in its opposition brief that the Company dissolved in 2019. D.I. 31 ¶ 12. In reply, Petitioner offers only its doubts, contending the Company "purportedly started to wind up in 2009." D.I. 39 ¶¶ 9–10.

of Petitioner's indemnification claim from the Company.[83]  I understand Petitioner to be arguing that if the receiver can prove the Company was a sham and its corporate veil should be pierced, then that broader conglomerate has assets that a receiver should marshal and, ultimately, put towards the Company's decommissioning obligations and Petitioner's indemnification.  I have my doubts as to whether a receiver should be appointed to investigate piercing an entity's corporate veil to help a third party seek a pocket that is not empty.  But assuming that purpose could justify appointing a receiver, Petitioner has failed to plead veil-piercing is facially plausible, as required to support good cause under Section 18-805.[84]

---

[83] D.I. 24 at ¶¶ 22–23; *see also* Am. Compl. ¶ 89.  Petitioner clarified at argument that the veil-piercing claim was specific to Petitioner's claim for indemnity from the Company to its members or affiliates.  D.I. 58 at 87.

Petitioner's motion refers to the Company as a "sham single-purpose entity," but does not mention veil-piercing claims at all.  D.I. 24 ¶ 22  Petitioner first raised those claims in reply.  D.I. 39 ¶¶ 4, 12.  The veil-piercing theory is waived for purposes of Petitioner's motion.  *See Jung v. El Tinieblo Int'l, Inc.*, 2022 WL 16557663, at *9 (Del. Ch. Oct. 31, 2022) ("Generally, the failure to raise an argument in one's opening brief constitutes a waiver of that argument. Waiver is fundamentally an issue of fairness: the belated presentation of an argument can deprive the opposing party of notice and the opportunity to respond.  A party does not necessarily preserve an argument merely by presenting some related facts in their opening brief.") (collecting authorities).

[84] *Tex. E. Overseas*, 2009 WL 4270799, at *5 n.39; *see also Reinz I*, 2023 WL 2568326, at *5 (quoting *Tex. E. Overseas*, 2009 WL 4270799, at *5 n.39).

"Veil piercing is a tough thing to plead and a tougher thing to get, and for good reason."[85] "Delaware public policy does not lightly disregard the separate" corporate form.[86] "This Court will disregard the corporate form only in the 'exceptional case.'"[87] When determining whether to pierce the corporate veil, the Court considers "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant

---

[85] *Verdantus Advisors, LLC v. Parker Infrastructure P'rs, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022).

[86] *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015) (internal quotation marks and citation omitted); *see also Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task.") (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)).

[87] *See eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *27 (Del. Ch. Oct. 4, 2013) (quoting *Case Fin., Inc. v. Alden*, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009)); *see also Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) ("In exceptional cases, corporate veil-piercing is necessary and appropriate." (internal quotation marks and citations omitted; cleaned up)); *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008) ("It is only the exceptional case where a court will disregard the corporate form[.]" (quoting *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990))).

shareholder."[88]  No single factor is determinative.[89]  The central inquiry is whether

a defendant abused or manipulated "the corporate form."[90]  In other words, "the

corporation must be a sham and exist for no other purpose than as a vehicle for

fraud."[91]  Even then, the plaintiff must plead "an overall element of injustice or

unfairness."[92]

Petitioner's allegations fall short of that high bar.  At most, Petitioner gestures

at undercapitalization.  Undercapitalization or insolvency alone is not enough to

warrant "piercing of the corporate veil."[93]  Each must be coupled with facts

---

[88] *Doberstein*, 2015 WL 6606484, at \*4 (quoting *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at \*11 (Del. Ch. Dec. 30, 2010)).

[89] *Manichaean*, 251 A.3d at 706–07.

[90] *Doberstein*, 2015 WL 6606484, at \*4.

[91] *Wallace*, 752 A.2d at 1184; *see also Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at \*5 n.73 (Del. Ch. Sept. 5, 2023) (collecting cases holding that veil-piercing requires well-pled facts supporting an inference that the corporation is a sham and exists solely as a vehicle for fraud).

[92] *Doberstein*, 2015 WL 6606484, at \*4 (internal quotation marks and citation omitted); *see also Manichaean*, 251 A.3d at 707 n.54.

[93] *See* Paul M. Coltoff, *54 C.J.S. Limited Liability Companies* § 14 (May 2025 Update) ("For undercapitalization to justify piercing the veil . . . it must be coupled with an intent at the time of capitalization to improperly avoid future debts of the limited liability company."); Matthew A. Cartwright et al., *Piercing the Corporate Veil— Undercapitalization*, *in* Litigating Bus. & Com. Tort Cases § 23:4 (July 2024 Update) [hereinafter "*Piercing the Corporate Veil*"] ("[S]imply alleging that a corporation is inadequately capitalized to pay a judgment generally is not sufficient to carry a plaintiff's burden of alleging a prima facie case."); *e.g.*, *Nieves v. Insight Bldg. Co., LLC*, 2020 WL 4463425, at \*8–9 (Del. Ch. Aug. 4, 2020) (noting "[u]ndercapitalization is a factor courts

suggesting a deliberate intent to improperly avoid the Company's liabilities or obligations.[94]

Petitioner does not allege that the Company was undercapitalized at formation or operated while insolvent. Instead, Petitioner claims undercapitalization resulted from distributing proceeds from its 2009 asset sale.[95] Petitioner alleges the Company's parent caused it to distribute those proceeds despite knowing the Company's buyer, which had assumed the Company's decommissioning obligations, was in danger of not being able to pay them.[96] On that basis, Petitioner

---

consider in determining whether an entity is in fact a sham," but emphasizing the analysis still requires evaluating whether "a sham or fraudulent corporation form [is used] solely as a vehicle to avoid liability"); *Mason v. Network of Wilm., Inc.*, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005) ("[M]ere insolvency is not enough to allow piercing of the corporate veil."). To hold otherwise would sanction permitting a creditor to "enter judgments against shareholders every time that a corporation becomes unable to pay its debts as they become due," such that "the limited liability characteristic of the corporate form would be meaningless." *Mason*, 2005 WL 1653954, at *3. Petitioner makes no argument that the Company was insolvent.

[94] Coltoff, *supra* note 93, at § 14; *Piercing the Corporate Veil*, *supra* note 93, at § 23:4 ("To show the type of undercapitalization sufficient to warrant piercing the corporate veil, a Courts look to undercapitalization that results from some form of misconduct by the shareholders.").

[95] Am. Compl. ¶¶ 27–28.

[96] *Id.* ¶¶ 30–31, 51, 67.

asserts the distributions were meant to avoid the Company's known decommissioning obligations.[97]

That theory is undercut by Petitioner's own timeline. The buyer assumed the Company's decommissioning obligations in 2009.[98] The buyer's financial troubles allegedly became apparent in 2015[99]—six years after the Company's asset sale and five years after the Company distributed most of its proceeds.[100] The vast temporal gap between the distribution and the alleged awareness of the buyer's financial distress undermines even the plaintiff-friendly assertion that the distributions were intended to hinder creditors or perpetuate injustice.[101]

Petitioner also does not allege the Company and its parent "commingle[d]" assets or were "intertwined" in their operations.[102] Instead, Petitioner asserts in

---

[97] *Id.* ¶¶ 15–16, 61, 66–67.

[98] *Id.* ¶ 43.

[99] *Id.* ¶ 30 (alleging "[s]ince at least 2015," the buyer's SEC filings had shown its distressed financial condition).

[100] *Id.* ¶ 57; *see also* D.I. 39 ¶ 9 (asserting the Company distributed 97% of the sale proceeds "by July 2010" (citing D.I. 31 Ex. 1)).

[101] *See Mason*, 2005 WL 1653954, at *3.

[102] *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989).

conclusory terms the Company was a mere "vehicle"[103] to hold the members' lease interests as a "nominee," with the profit from doing so spun off to other ventures without any heed for decommissioning obligations.[104] Petitioner also disparages the Company's members as mere holding companies for "other corporate entities, including [the Company]."[105] These allegations relate a functional corporate structure, not anything nefarious. The Company was formed in 2006 to acquire oil and gas assets;[106] sold those assets and transferred decommissioning obligations in 2009;[107] distributed the sale proceeds in the years after;[108] and was cancelled in 2019, though perhaps with the knowledge that its subsequent buyers failed to satisfy the decommissioning coverage.[109] The ultimate parent is a Japanese entity; and its

---

[103] Am. Compl. ¶ 57; *see also id.* ¶ 9 (alleging the press release announcing the 2006 transaction described the Company as "a vehicle newly established" for that transaction purpose).

[104] *Id.* ¶¶ 59, 61.

[105] *Id.* ¶ 60.

[106] *Id.* ¶¶ 7–9.

[107] *Id.* ¶¶ 26–28, 43.

[108] *Id.* ¶¶ 26–28.

[109] *Id.* ¶¶ 43, 51. When the Company was cancelled, Petitioner asserts there was reason to know those obligations were no longer covered; Intervenor asserts they still were. *Id.* ¶ 51 (alleging "years before [the Company] cancelled its Certificate in 2019, it had full knowledge that" its arrangement to "transfer its responsibility for the decommissioning obligations to [the buyer] had failed"); *id.* ¶¶ 29–31 (alleging the confirmation order approving the buyer's bankruptcy should have put Petitioner on notice of the buyer's

subsidiaries—including the former members of the Company—served as holding companies for other U.S.-based business ventures.[110]  Far from blurring lines, these allegations indicate that the Company and its affiliates occupy defined positions with distinct functions within a multi-tiered investment structure.[111]

Petitioner also fails to plead facts suggesting that the Company's parent or affiliates "siphoned" funds from the Company.  Rather, Petitioner alleges that the Company's parent directed the distribution of the 2009 asset sale proceeds to affiliates to support other investments.[112]

Nor has Petitioner made a facially plausible showing that the Company "simply functioned as a facade for the dominant shareholder."[113]  Petitioner asserts

---

inability to assume the decommissioning obligations contractually transferred from the Company); *compare* D.I. 24 ¶ 22 and D.I. 39 ¶¶ 3, 10, *with* D.I. 31 ¶¶ 3, 11.  I need not resolve this dispute, and indeed cannot.  *See infra* Section II(C).

[110] Am. Compl. ¶¶ 3, 56, 60.

[111] *See Cleveland-Cliffs Burns Harbor*, 2023 WL 5688392, at *6 (finding it unreasonable to infer the parent and subsidiaries function as "a single economic entity" when the parent was "an alternative asset management firm based in Connecticut" and the subsidiaries have manufacturing facilities, "employees, products, and customers"); *cf. Manichaean*, 251 A.3d at 708 (finding veil piercing sufficiently pled when the parent "failed to observe certain corporate formalities," including by sharing with the subsidiary the same headquarters and personnel).

[112] Am. Compl. ¶ 61.

[113] *Doberstein*, 2015 WL 6606484, at *4.

the Company's parent formed the Company as an investment "vehicle," acted as its "decisionmaker[]," and used the Company as a sham "to intentionally perpetuate a fraud on" Petitioner, other similarly situated parties, and state and federal governments.[114] But these assertions amount to little more than frustration that the Company's familial structure makes it difficult for Petitioner to collect from any pocket other than the Company's. They do not suggest the Company's corporate form was abused to perpetuate fraud.

Petitioner's theory of injustice rests on the fact that the Company's inability to fund decommissioning obligations may leave those obligations to Petitioner and taxpayers.[115] But Delaware courts have rejected that "sort of circular reasoning" that treats the underlying liability in the present litigation as proof of the injustice justifying veil piercing.[116] The plaintiff must plead not only injustice, but particularized facts showing that injustice flows from misuse of the corporate form. Petitioner has not done so.

---

[114] Am. Compl. ¶¶ 7, 9, 57, 68.

[115] *Id.* ¶¶ 38, 68, 91.

[116] *Gracey v. Albawardi*, 2024 WL 5116368, at *5 (Del. Ch. Dec. 13, 2024) (citing *Mobil Oil*, 718 F. Supp. at 268 (noting the "underlying cause of action does not supply the necessary fraud or injustice" for purposes of veil piercing because "[a]ny breach of contract and any tort . . . is in some sense, an injustice")).

Indeed, Petitioner appears to concede as much. Petitioner acknowledges that it "has not brought veil-piercing claims in this action" but suggests appointing "a receiver to investigate such claims."[117] Petitioner hopes that a receiver "may [discover] facts that support veil-piercing claims against [the Company's] former members and/or affiliates."[118] Speculation that a receiver might find facts supporting those claims cannot support the receiver's appointment. Petitioner does not come close to showing it is facially plausible that the Company and its members "operate[] as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them."[119] The request to investigate veil-piercing does not support appointing a receiver.

### C. Cash On Hand

Petitioner attacks on one more front. In opposing Petitioner's motion to appoint a receiver, Intervenor submitted a schedule of the distributions from the

---

[117] D.I. 46 at 38.

[118] Am. Compl. ¶ 89 (alleging "[t]he receiver's investigation may also yield facts that support veil-piercing claims against [the Company's] former members and/or affiliates arising from the stripping of [the Company's] assets without paying or making reasonable provision to pay for [the Company's] known obligations"); D.I. 46 at 38–39.

[119] *Mabon, Nugent & Co. v. Tex. Am. Energy Corp.*, 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990); *see Tex. E. Overseas*, 2009 WL 4270799, at *5 n.39.

2009 asset sale.[120]  From there, Petitioner developed a new theory—not pled in its Amended Complaint or presented in its motion—that the Company had $2.58 million on hand when it filed its certificate of cancellation, but did not set any funds aside for decommissioning or related indemnification claims.[121]

On Intervenor's motion to dismiss, Petitioner's assertions regarding the $2.58 million cannot be considered.  They were made only in Petitioner's answering brief opposing dismissal, not in the Amended Complaint.[122]

Assuming Petitioner stated a claim, on Petitioner's motion to appoint a receiver, those assertions similarly fail to carry the day.  They inspire a complex factual dispute about whether the Company fairly believed its decommissioning obligations would be handled by its buyer's buyer.[123]  I cannot resolve that factual

---

[120] D.I. 31 ¶ 12, Ex. 1.

[121] D.I. 39 ¶ 10 (citing D.I. 31 ¶ 12); D.I. 46 at 3, 5, 35; D.I. 58 at 69 ("Then we get the distribution schedule, and it turns out that even after all of this, they still had 2.58 million."); *id.* at 39, 54, 67, 87.

[122] D.I. 46 at 35; *see Parseghian ex rel. Gregory J. Parseghian Revocable Tr. v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *8 n.75 (Del. Ch. June 21, 2022) ("Plaintiff[] cannot amend [its] Complaint through [its] brief.").

[123]  The initial buyer of the Company's assets had assumed the Company's decommissioning obligations; Petitioner alleges those obligations were discharged in the buyer's subsequent bankruptcy.  Am. Compl. ¶¶ 29–31.  That buyer was later acquired; that purchaser also went through bankruptcy.  *Id.* ¶¶ 32–33.  Petitioner alleges that ultimate buyer disclaimed the Company's decommissioning obligations.  *Id.* ¶¶ 33, 35.  Intervenor disagrees, contending the ultimate buyer assumed the Company's decommissioning

dispute on Petitioner's allegations and Intervenor's contentions.[124]  Petitioner has

failed to demonstrate a reasonable likelihood of a Section 18-804 violation.

*      *      *

Intervenor's motion to dismiss based on timeliness is DENIED.  Intervenor's

motion to dismiss Count II for failure to state a claim is GRANTED.  Petitioner's

motion to appoint a receiver is DENIED.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

obligations.  D.I. 40 at 14–18; D.I. 40 Ex. 2 at 76; D.I. 50 at 14–18, 24.  Petitioner concedes there are "many unresolved factual issues" concerning whether adequate provision was made for the Company's decommissioning obligations.  Am. Compl. ¶¶ 88–89.  Petitioner seeks the appointment of a receiver to investigate those facts.  *Id.*

[124] *See, e.g.*, *VBR Agency*, 274 A.3d at 1071 (finding the scant record insufficient to adjudicate merits of the petition to appoint a receiver and requiring counsel to supplement the record); *Civic Ass'n of Surrey Park v. Riegel*, 2021 WL 4059971, at *2 (Del. Ch. June 2, 2021) (declining to appoint a receiver "on a pretrial motion with a disputed factual record"); *Ross Hldg. & Mgmt.*, 2010 WL 3448227, at *9 (refusing to appoint a receiver when "material facts remain in dispute" and finding it "necessary to hold a trial in order to further develop the necessary factual record").